[Cite as *State v. Pears*, 2020-Ohio-739.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-P-0077** |
| DIANE IOLA PEARS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Municipal Court, Kent Division, Case No. 2018 CRB 1046 K.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Deano C. Ware*, Deano C. Ware, P.C., 23332 Farmington Road, Suite 412, Farmington Hills, MI 48332, and *Brendon J. Kohrs*, 3580 Darrow Road, Stow, OH 44224 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Diane Iola Pears, appeals her conviction in the Portage County Municipal Court, Kent Division, for Obstructing Official Business. The issue to be determined by this court is whether a charge of obstruction is supported by sufficient evidence when testimony indicates that the defendant provided false statements to police which delayed their investigation of another crime for a short period of time. For the following reasons, we affirm the decision of the trial court.

{¶2} On August 8, 2018, a Complaint was filed against appellant for violating R.C. 2921.31(A), Obstructing Official Business, a misdemeanor of the second degree, by lying to police officers investigating a car accident.

{¶3} A trial to the court was held on March 18, 2019, at which the following pertinent testimony was presented:

{¶4} Officer Samantha McNulty and Officer Lindsey Llewellyn of the Kent Police Department responded to a report of a car accident at an apartment complex which occurred on August 3, 2017, at around 12:28 p.m. They encountered one driver, Eric Nemeth, and discovered that the second driver, whose identity was unknown but was later determined to be Tuesday Pears, had left the scene. Nemeth provided the license plate number and description of the other vehicle as well as photographs of the vehicle and driver. Nemeth told the officers that the driver had given him a phone number and the name "Diane Harris."

{¶5} Following the accident, Llewellyn spoke with the leasing agent of the apartment complex where the accident occurred, found that the second vehicle was registered via parking pass to appellant, an apartment resident, and confirmed the car registration through the LEADS system. According to Llewellyn, the car registered to appellant was located a couple hundred yards from appellant's residence and a block from where the accident occurred. McNulty called the phone number provided by Nemeth to speak with "Diane" and a person named Tuesday answered the phone and stated that she was not available.

{¶6} According to Llewellyn, appellant, Tuesday's mother, subsequently called and left her information with police dispatch on August 3 after Llewellyn and McNulty

2

had ended their shift. On August 5, the officers returned appellant's call at 8:23 a.m. and inquired about the vehicle, seeking to obtain insurance and driver information for the police report. McNulty testified that appellant "immediately stated that the car was with her at her place of employment [on August 3], and it was – she only had one key to the vehicle so there was no way that it would be involved in a motor vehicle accident." Appellant stated she had been at work from 6:30 a.m. to 5:00 p.m. on the date of the accident. She denied the vehicle being in an accident and would not give information to complete the police report or the name of her employer to confirm the location of appellant and the car on August 3. Llewellyn agreed with McNulty's characterization of the phone call, adding that appellant had stated no one had borrowed her vehicle on August 3.

{¶7} McNulty testified that further investigation performed on August 5 after speaking with appellant showed that the photo taken by Nemeth matched a Facebook photo of Tuesday Pears. Llewellyn, in contrast, stated that by the time they spoke with appellant on the phone, she had already looked at the Facebook photo of Tuesday. She later testified, however, at the time of the phone call she had not "confirmed though that the identity of the driver was Tuesday Pears." On August 5 at 9:59 a.m., McNulty and Llewellyn went to the Pears' residence to serve a hit-skip citation on Tuesday, but appellant would not open the door.

{¶8} McNulty testified that appellant was charged with Obstructing Official Business because she lied about the involvement of her vehicle in the accident which impeded the officers' investigation and prevented them from obtaining insurance and driver information. Llewellyn testified that the dishonest statements by appellant

3

delayed the investigation because they "weren't able to positively identify her daughter immediately after the crime had occurred."

{¶9} Appellant testified that her daughter informed her of the accident on August 3 and gave her the police department number to call. Appellant called around 3 p.m. and was told the officers investigating the case had left. She called again twice the next day and was told the officers were not working that day.

{¶10} Appellant testified that when she spoke with Llewellyn and McNulty on August 5 around 8:23 a.m., she was discombobulated and had taken allergy medication. She did not recall discussing the car but only her work schedule, telling the officers she was unclear of the dates she worked. She testified that she did not tell the officers she had the car with her on August 3 but went over her work schedule to help demonstrate she was not in the car accident. She stated that she felt more comfortable going to the police station to discuss information such as the identity of her employer and told this to the officers.

{¶11} On April 11, 2019, the court issued a Judgment Entry finding "beyond a reasonable doubt" that appellant committed the offense of Obstructing Official Business. On June 12, 2019, the court sentenced appellant to pay a $500 fine and serve 90 days in jail. The jail time and $400 of the fine were suspended upon the conditions of completing community service and committing no violations of the law for one year.

{¶12} Appellant timely appeals and raises the following assignments of error:

{¶13} "[1.] In its April 11, 2019, one paragraph judgment of entry, the Trial Court failed to delineate either its 'findings of fact or conclusions of law' in finding the Defendant-Appellant guilty of Obstructing Official Business, nor did the trial court state

4

that in doing so, it had found the Defendant was guilty 'beyond a reasonable doubt.' Without its findings of fact and conclusions of law, this court is cannot [sic] 'assume' that the court applied the correct standard or was presented with sufficient proofs to find the Defendant-Appellant guilty beyond a reasonable doubt.

{¶14} "[2.] The trial court in finding the Defendant guilty of Obstructing Official Business failed to state what 'affirmative acts' it found the Defendant-Appellant had performed that constituted a violation of ORC 2921.31 where the only evidence entered at trial showed that none of the Defendant-Appellant's verbal acts either delayed, hampered or impeded the investigation and the Defendant-Appellant's 'act' of not allowing the officers into her home could not support a conviction for obstructing official business as a matter of law."

{¶15} Appellant's assignments will be discussed in a consolidated fashion as they were addressed in her brief. In her first assignment of error, appellant contends that the trial court did not make findings of fact or conclusions of law nor did it "state that * * * it had found the Defendant was 'guilty beyond a reasonable doubt'" to demonstrate it applied the correct standard. In her second assigned error, she argues there was insufficient evidence to support her conviction, also raising concerns with the accuracy of the facts alleged in the officers' testimony, an issue relating to the weight of the evidence.

{¶16} Sufficiency is a test of the adequacy of the evidence either to determine "whether the evidence is legally sufficient to support the * * * verdict as a matter of law." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support

5

a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," i.e., "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶17} In contrast, "weight of the evidence addresses the evidence's effect of inducing belief" and warrants consideration of "whose evidence is more persuasive - - the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. An appellate court considering whether a verdict is against the manifest weight of the evidence must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶18} First, as to appellant's contention in both assignments of error that the court failed to make findings of fact or conclusions of law to support its verdict, such findings are not required. "In a case tried without a jury the court shall make a general finding" and "is not required to make findings of fact and conclusions of law." Crim.R. 23(C); *State v. McCune*, 11th Dist. Portage No. 1020, 1981 WL 4393, *4 (June 15, 1981). Further, appellant's contention that the trial court did not state that it found her guilty "beyond a reasonable doubt" is incorrect. The court's Judgment Entry states the

6

following: "The Court after considering the testimony herein finds beyond a reasonable doubt that * * * Defendant did commit the offense of Obstructing Official Business."

{¶19} Appellant next contends that certain elements of the crime of Obstructing Official Business were not proven by the State with evidence sufficient to sustain a conviction.

{¶20} Appellant was convicted of Obstructing Official Business, in violation of R.C. 2921.31(A), which provides: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

{¶21} Appellant argues that the requirement for a defendant to perform an "act" that impedes the officer was not proven since such "act" must be an affirmative one. She asserts that failing to cooperate with police or refusing to respond to their requests does not constitute obstruction.

{¶22} This court has held that "a failure to act," which "is not in and of itself an affirmative act" does not constitute conduct sufficient to satisfy this element of Obstructing Official Business. *State v. Vitantonio*, 2013-Ohio-4100, 995 N.E.2d 1291, ¶ 13-17 (11th Dist.). Appellant contends that her refusal to answer the door when the officers came to her house to serve Tuesday a traffic citation was not an affirmative act but a failure to act. However, the evidence demonstrates that appellant's conviction was based upon her specific conduct that interfered with the investigation, not her failure to answer the door after the investigation was completed. Both officers testified that appellant's dishonest statements when asked questions about her vehicle were the

7

basis for the obstruction charge. Dishonest statements constitute an affirmative act and are sufficient to establish this element. *State v. Lazzaro*, 76 Ohio St.3d 261, 667 N.E.2d 384 (1996), syllabus ("[t]he making of an unsworn false oral statement to a public official with the purpose to mislead, hamper or impede the investigation of a crime is punishable conduct within the meaning of * * * [R.C.] 2921.31(A)"). The record provides sufficient evidence that dishonest statements were made, since the officers testified appellant stated the vehicle had been with her at work and that no one had borrowed it or had access to keys to drive it on August 3. These statements were contradicted by the fact that, on August 3, the vehicle was in an accident while being driven by appellant's daughter, was located at the apartment complex, and was not with appellant at work.

{¶23} Although appellant does not specifically raise a manifest weight argument, she takes issue with the accuracy of the testimony of the officers regarding their questioning of her. To the extent that this involves weighing of the evidence rather than its adequacy, we apply a manifest weight standard. Appellant argues that the officers testified that they asked about the location of the vehicle but her testimony demonstrates that they did not and she did not lie about this issue. She emphasizes, presumably in support of her contention that the officers lacked credibility, that they did not record their conversation with her although this type of conversation was "routinely recorded." The trier of fact is in the best position to determine issues of credibility. *State v. Starkey*, 11th Dist. Ashtabula No. 2017-A-0022, 2017-Ohio-9327, ¶ 52. The officers' testimony contradicted appellant's, supported the argument that she was untruthful, and we decline to second guess the fact-finder's determination of credibility.

{¶24} Appellant also argues that she did not hamper or impede the police officers' investigation since, when they spoke to her, they already knew Tuesday was the driver, had a picture of the vehicle, and they arrived at appellant's residence to serve the hit-skip citation only an hour and a half after speaking with her.

{¶25} There is some dispute in the testimony as to when the officers identified Tuesday as the driver of the vehicle but the record demonstrates that some facts relating to the accident, such as the vehicle involved, were confirmed prior to speaking with appellant. Nonetheless, even if the officers believed Tuesday was the driver of appellant's vehicle during the accident before they spoke to appellant, they testified it was necessary to speak to her as part of the accident investigation. Appellant's statements contradicted the other evidence they had gathered. While the officers ultimately decided to proceed with citing Tuesday and determined that the information given by appellant was false, they testified that appellant's statements caused a delay in the investigation and impeded their progress. Further, the purpose to obstruct was evident in her refusal to cooperate, untruthful statements, and due to the fact that these statements protected her daughter.

{¶26} Where a defendant's lies have caused a delay in the investigation, even for a short period of time, this has been found sufficient to support a conviction for obstructing official business. *State v. Ertel*, 12th Dist. Warren No. CA2015-12-109, 2016-Ohio-2682, ¶ 11 (defendant's repeated lies to officers hampered their investigation by requiring 20 to 30 minutes of additional investigation and questioning); *State v. Shoemaker*, 1st Dist. Hamilton No. C-140724, 2015-Ohio-4645, ¶ 15-19 (affirming an obstruction conviction where the defendant lied about her involvement in a hit skip

9

accident to an officer who had already viewed surveillance video of the incident, which delayed the investigation by five minutes); *State v. Novak*, 4th Dist. Gallia No. 16CA4, 2017-Ohio-455, ¶ 16 (the trier of fact was free to believe the officer's testimony that an arrest would have been made more quickly had the defendant not made a false statement). Officer Llewellyn testified that they were not able to positively identify Tuesday "immediately after the crime" because of appellant's misstatements. It is reasonable that, even if the investigation seemed to clearly show Tuesday was the driver, some delay would occur in trying to verify or corroborate contradictory statements by the owner of the vehicle involved in the accident. While appellant argues that the testimony regarding immediate identification "doesn't even make sense" since officers did not speak to her until two days later, it is evident Llewellyn was referencing the fact that appellant's lies caused a delay in the investigation.

{¶27} Based on the foregoing, we find that the elements of Obstructing Official Business were supported by both the manifest weight of the evidence and sufficient evidence.

{¶28} The first and second assignments of error are without merit.

{¶29} For the foregoing reasons, appellant's conviction for Obstructing Official Business is affirmed. Costs to be taxed against appellant.

THOMAS R. WRIGHT, J.,

MARY JANE TRAPP, J.,

concur.

10